1  WINSTON & STRAWN LLP
   David A. Honig (SBN: 160721)
2  101 California Street
   San Francisco, CA 94111-5802
3  Telephone:    (415) 591-1000
   Facsimile:    (415) 591-1400
4  dhonig@winston.com

5  Counsel for Chapter 11 Trustee
   JAMES S. LOWE II
6

7              **UNITED STATES BANKRUPTCY COURT**

8              **NORTHERN DISTRICT OF CALIFORNIA**

9                      **OAKLAND DIVISION**

10 In re:                              ) **Case No. 11-70893 RLE**
                                       )
11                                     ) **Chapter 11**
                                       )
12                                     ) **SUPPLEMENTAL DECLARATION OF**
   SAWHNEY PROPERTIES LP,              ) **DAVID A. HONIG IN RESPONSE TO**
13                                     ) **BAY AREA DEVELOPMENT**
                                       ) **COMPANY'S "LIMITED OBJECTION"**
14         Debtor.                     ) **TO NOTICE OF HEARING ON FIRST**
                                       ) **INTERIM FEE APPLICATIONS OF**
15                                     ) **THE CHAPTER 11 TRUSTEE,**
                                       ) **GABRIELSON & COMPANY, AND**
16                                     ) **WINSTON & STRAWN LLP**
                                       )
17                                     )
                                       ) Date:   December 12, 2012
18                                     ) Time:   2:00 p.m.
                                       ) Judge:  Honorable Roger L. Efremsky
19                                     ) Place:  United States Bankruptcy Court
                                       )         1300 Clay Street, Courtroom 201
20                                     )         Oakland, CA 94612
   _____)
21

22         I, David A. Honig, declare as follows:

23         1.      I am an attorney at law, licensed to practice in the State of California and

24 before this Court. I am a partner with the firm of Winston & Strawn LLP ("W&S"), counsel for

25 James S. Lowe II, duly appointed and acting trustee (the "Trustee") of Sawhney Properties LP

26 (the "Debtor"), debtor in the above-captioned bankruptcy case. I make this declaration in that

27 capacity and, if called upon to do so, I could and would testify of my own personal knowledge to

28 the facts set forth herein.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

2.     At the request of the Trustee, this declaration is submitted jointly on behalf of the Trustee, Gabrielson & Company ("Gabrielson"), and Winston & Strawn LLP ("W&S"), in connection with the Notice of Hearing on First Interim or Final Applications for Compensation for Services and Reimbursement of Expenses by Trustee and Professionals, and in response to the related "Limited Objection" filed by Bay Area Development Company ("BADC").

3.     The Limited Objection correctly states that no court order addresses the use of cash collateral with respect to the Debtor's former Ramada property.  After the appointment of the Trustee on January 24, 2012 (the "Appointment Date"), I informed BADC's counsel, Mr. William Healy, that the estate was using cash proceeds of Ramada operations under a series of informal agreements with Fremont Bank, which held first and second deeds of trust with respect to the Ramada, and later with Fremont's successor, Oceanic West Sacramento LLP (collectively with Fremont Bank, the "Senior Creditors").   Although BADC has asserted rights in Ramada cash collateral, I am informed and believe, and have repeatedly advised BADC's counsel, that there is no factual basis for its assertion of such rights.

4.     The records of the Debtor establish that the security interests of BADC arose under a third deed of trust and were junior and subordinate to the security interests of the Senior Creditors.  See Joint Motion of Fremont Bank and Trustee for Agreed Order for Relief from Automatic Stay Regarding Ramada Inn Property ("Ramada Stay Relief Motion") [Docket #238], ¶4 et seq.  The record in this case also establishes that the Debtor's obligations to the Senior Creditors exceeded the value of the Ramada property.  Accordingly, in my communications with BADC's counsel, I have consistently stated that BADC did not appear to possess effective rights with respect to cash collateral.  BADC has presented no evidence to the contrary.

5.     The schedules of assets and liabilities filed by the Debtor in 2011 listed the value of the Ramada property as $4,000,000 as of the Petition Date.  As of the Petition Date, the Debtor's obligations to the Senior Creditors with respect to the Ramada were not less than $4,137,113 and increased thereafter.  Ramada Stay Relief Motion ¶4 et seq.; see also Fremont

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Bank proofs of claim #13 and #14, filed February 8, 2012. Thus, the Trustee understood BADC's security interests to have been under water from the inception of this case.

6.     In our first email exchanges, on January 25, 2012, Mr. Healy stated: "We understand the Ramada Inn Hotel Property was appraised in September 2011 for approximately $5,250,000 (mix of income and sales comparison valuations). We previously advised Debtor's counsel that the $4,000,000 value listed in Debtor's schedules was simply 'way off base'." [1] In my telephone conversations with Mr. Healy in late January and early February 2012, I requested, but did not receive, a copy of the cited appraisal. During the same period I also inquired separately of counsel for Fremont Bank, counsel for franchisor Ramada Worldwide Inc., and former counsel for the Debtor, none of whom professed awareness of the existence of such an appraisal or any other reason to believe that the Debtor's valuation was materially inaccurate. The Trustee proceeded on the basis that BADC's claim was unsecured, and consulted with the Senior Creditors regarding the use of Ramada cash collateral.

7.     During February 2012, the Trustee, Gabrielson and I provided several reports to BADC regarding the finances and operations of the Ramada, responded to Mr. Healy's questions, and reiterated that the Senior Creditors had consented to the use of Ramada cash collateral. After February 2012, BADC fell silent until the filing of the Trustee's second status conference statement on May 15, 2012, which incorporated comments on Ramada finances and elicited a filed response from BADC. On the same date, I replied to BADC, sending Mr. Healy further financial data by email and discussing the matter with him by telephone. During our conversation I reiterated that the Trustee and Fremont Bank believed BADC to be unsecured, and asked Mr. Healy to advise me if he had any specific basis to think otherwise. Again, BADC provided no evidence to support its assertion of rights.

8.     On May 31, 2012, the Trustee and Fremont Bank filed the Ramada Stay Relief Motion. Apart from the Debtor's own statement that the Ramada was worth $4,000,000 as of the Petition Date, the sole evidence of value presented in connection with the Ramada Stay

---

[1] Copies of the email correspondence and attachments summarized in this declaration are available upon request.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Relief Motion was an appraisal report obtained by Fremont Bank, which estimated the value of the property to be $4,350,000 as of the Appointment Date. BADC did not dispute the valuation of the Ramada property or otherwise respond to the Ramada Stay Relief Motion, although BADC's counsel attended by telephone both the preliminary hearing (June 13, 2012) and the final evidentiary hearing (June 18, 2012) on the Ramada Stay Relief Motion.

9. The Court granted the Ramada Stay Relief Motion. I am informed and believe that on August 1, 2012, the Senior Creditors purchased the Ramada property at a foreclosure sale with respect to the first deed of trust for a full credit bid of $4,445,885.32, leaving in place the second deed of trust with an outstanding balance of $45,342.26. Thus, as of the date of foreclosure, the Debtor's obligations to the Senior Creditors exceeded $4,491,000, which was at least $141,000 in excess of the highest gross value ever proposed for the Ramada property and $491,000 in excess of the Debtor's own valuation. To my knowledge, BADC did not bid or participate at the foreclosure sale.

10. On August 21, 2012, the Trustee filed his third status conference report, addressing the fact that the Trustee and his professionals proposed to fund administrative expenses, including professional fees, from proceeds of operations. With respect to Ramada proceeds, the status report stated that payments to professionals would require approval of the Court in consultation with the Senior Lenders. In response, Mr. Healy emailed me on August 22, 2012, reasserting BADC's rights as a secured creditor and asking for "the Chapter 11 Trustee's basis for the [sic] to deny that the funds referenced in the Chapter 11 Trustee's Status Conference Statement (and in Debtor's MORs and your email) are not [sic] BADC's cash collateral." [2]

11. I responded by email on August 24, 2012, reminding Mr. Healy that BADC's claim was unsecured. Citing the record in this case, I reiterated that the realizable value of the Ramada property was below the amount of secured debt held by the Senior Lenders from the Appointment Date through the date of foreclosure. BADC did not respond to this

---

[2] On October 23, 2012, the Trustee filed his fourth status conference report, again addressing the fact that the Trustee and his professionals proposed to fund Ramada professional fees from proceeds of operations, subject to the approval of the Court and the Senior Lenders. BADC did not respond to that report, although its counsel telephonically appeared at the related status conference on October 30, 2012.

communication or contest the Trustee's economic analysis in any way. BADC telephonically appeared through counsel at the status conference on August 28, 2012, but did not address the cash collateral issue. BADC remained silent until filing the Limited Objection.

12.     The Limited Objection makes much of the proposition that a secured creditor need not take formal court action to retain its rights with respect to cash collateral under the Bankruptcy Code. However, one may draw a different conclusion from BADC's inaction in this case. It appears that BADC never requested relief regarding the use of cash collateral, never sought an order for adequate protection, did not respond to the Ramada Stay Relief Motion, never requested stay relief for its own account, never disputed the valuation of the Ramada property, did not bid at the foreclosure sale, and never directed the Court's attention to ostensible cash collateral issues raised by the Trustee's status conference reports in this case, because BADC is a secured creditor in name only and has no cognizable rights with respect to Ramada cash collateral.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and that this declaration was executed at San Francisco, California, on this 10th day of December, 2012.

    /s/ David A. Honig
    David A. Honig

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894