WINSTON & STRAWN LLP
David A. Honig (SBN: 160721)
101 California Street
San Francisco, CA 94111-5802
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
dhonig@winston.com

Counsel for Chapter 11 Trustee
JAMES S. LOWE II

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>SAWHNEY PROPERTIES LP,<br><br>　　　　Debtor. | Case No. 11-70893 RLE<br><br>Chapter 11<br><br>Date: April 23, 2013<br>Time: 1:30 p.m.<br>Judge: Honorable Roger L. Efremsky<br>Place: United States Bankruptcy Court<br>　　　　1300 Clay Street, Courtroom 201<br>　　　　Oakland, CA 94612 |

**SIXTH STATUS CONFERENCE REPORT OF
JAMES S. LOWE II, CHAPTER 11 TRUSTEE**

　　　　James S. Lowe II, in his capacity as chapter 11 trustee (the "<u>Trustee</u>") for Sawhney Properties LP (the "<u>Debtor</u>"), respectfully submits the following as his sixth status conference report in the above-captioned chapter 11 case.

　　　　1.　　The Debtor commenced this case on October 12, 2011. No committee of unsecured creditors has been appointed. On January 24, 2012, the Office of the United States Trustee appointed the Trustee, which appointment was approved by this Court's order of the same date (the "<u>Appointment Date</u>").

　　　　2.　　At a status conference on February 26, 2013, the Trustee presented his fifth status report herein. This sixth status report summarizes activities of the Trustee, his accountant and counsel from the date of that status conference through April 19, 2013.

Financial and Administrative Matters

3. <u>Monthly Operating Reports; Taxes; Insurance</u>. The Trustee and his accountant have timely filed operating reports for the months of February and March 2013.[1] All required payments to federal, state and local taxing authorities have been timely made in connection with the Debtor's properties and operations. All required insurance policies remain in force.

4. <u>Quarterly Fees</u>. The Trustee believes that no quarterly fees assessed by the Office of the United States Trustee are currently due or past due.

5. <u>Resolution of Insider Avoidance Action</u>. The Trustee resolved the case of *Lowe v. Dinesh Sawhney, et al.*, A.P. No. 12-04168, pursuant to the Settlement Agreement approved by this Court on March 20, 2013. On March 27, 2013, the estate received the required settlement payment of $425,000 from the defendants, and the mutual releases provided under the Settlement Agreement became effective. The insider avoidance action was dismissed with prejudice on April 8, 2013.

<u>Trustee's Plan of Action to Wind Up Estate</u>.

6. <u>Checklist</u>: As summarized in prior status reports and hearings, the Trustee has substantially concluded the administration of this estate, leaving the following to be addressed:

(a) Allowance and payment of administrative expenses other than those of professionals;

(b) Allowance of fees and expenses previously paid to certain local property managers engaged by the Trustee and/or by the Debtor prior to appointment of the Trustee;

(c) Determination of the treatment of the two parcels of real property remaining in the estate – the restaurant facility at 140 Shaw Ave., Fresno (the "<u>Fresno Property</u>"), and the residential duplex at 1106 85th Avenue, Oakland (the "<u>Oakland Property</u>");

(d) Allowance and payment of outstanding fees and expenses for the Trustee, his counsel and accountant;

(e) Final tax and bankruptcy estate reporting for the chapter 11 case;

(f) Proposed conversion of the Debtor's chapter 11 bankruptcy case to a case under

---

[1] As noted in earlier status reports, although each operating report incorporates consolidated and separate cash flow histories for each of the Debtor's property locations, certain aspects of the operating reports may later be amended or restated with respect to income and expense allocations affected by the Court's stay relief orders and related foreclosure proceedings.

chapter 7 of the Bankruptcy Code;

(g) Final pro rata distributions to general unsecured creditors of the Debtor through the proposed chapter 7 estate; and

(h) Final reporting and closing of the chapter 7 case.

7. <u>Vendor Administrative Expenses</u>. The Trustee and his accountant have completed interim accounting reconciliations for the Debtor's former Ramada Inn, Clovis, Visalia, and Pinole properties. Disputes had arisen, however, among secured parties and administrative claimants regarding the allocation of certain operating and professional expenses incurred prior to the foreclosure sale on the Ramada Inn, leaving in doubt the treatment of approximately $135,000 in postpetition expenses incurred by the hotel's vendors and franchisor. It now appears that the estate will have sufficient cash available to pay these amounts in full, obviating the disputes. The Trustee has begun communicating with the affected claimants to finalize reconciliation of the amounts to be paid to these parties as administrative claims. The estate has generally paid as incurred all non-professional administrative expenses for the Debtor's other former and remaining properties.

8. <u>Property Managers</u>: The Court has approved, and the Trustee has paid on a final basis, all postpetition fees and expenses of K4 Management, former property manager for the Clovis property ("<u>K4</u>"). The Court formally approved K4's retention by the Trustee only after time-consuming and costly efforts to correct deficiencies in the Debtor's employment application for K4. As described in the Trustee's prior status reports, however, the Debtor's employment applications for Kupuna Hospitality, former property manager for the Ramada property ("<u>Kupuna</u>"), and Gallagher & Miersch, former property manager for the Pinole property ("<u>G&M</u>"), were also deficient. As Kupuna and G&M appeared to be disinterested under applicable employment standards, the Trustee requested Kupuna and G&M to complete their work, and to receive periodic management fees from proceeds of operations, subject to the understanding that their employment and compensation would be subject to later Court approval. The Debtor's prepetition property manager for the Visalia property withdrew shortly after the Appointment Date, and Northstar Management ("<u>Northstar</u>") took on the Visalia assignment on similar terms. In light of the status of this case, the Trustee seeks the guidance of the Court and the Office of the United States Trustee in

finalizing the employment and compensation arrangements for Kupuna, G&M, and Northstar in the most efficient manner practicable.

9. <u>Fresno Property and Oakland Property</u>. As previously reported, these properties, the only remaining material non-cash assets of the estate, are subject to security interests in favor of Dr. Bruce Rice and his controlled entity, East Bay Head & Neck Surgery, Inc. (collectively, "<u>Dr. Rice</u>"). The amount of secured debt on each property appears to exceed the property's fair market value. The Trustee has determined that it would be appropriate for the estate to stipulate to stay relief in favor of Dr. Rice with respect to these properties if the parties reach agreement regarding the disposition of cash collateral generated by the properties' operations since the Appointment Date, and other matters related to the estate's obligations to Dr. Rice. The Trustee is prepared to effect such agreements before the closing of the chapter 11 case.

10. <u>Estate Professional Fees</u>. The Court has approved, and the estate has paid on an interim basis, certain fees and expenses of the Trustee and his accountant for the period from the Appointment Date through September 30, 2012, and certain fees and expenses of the Trustee's counsel for the period from the Appointment Date through December 31, 2012. The Trustee and his professionals will submit fee applications for more recent periods, with the goal of implementing final allowance and payment of all professional fees incurred in the Debtor's chapter 11 case prior to the proposed conversion of the case to chapter 7, discussed below.

11. <u>Estate Cash; Proposed Chapter 7 Conversion</u>. The Trustee anticipates that, after the allowance and payment of all administrative expenses of this chapter 11 case, estate cash of at least $300,000 may be available for ratable distribution on account of general unsecured claims. The Trustee respectfully submits that prosecution of a chapter 11 plan in this case would be needlessly cumbersome and time-consuming. The Trustee has proposed to the Office of the United States Trustee the potential conversion of the Debtor's chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code, for the practical purpose of administering general unsecured claims under procedures appropriate to the task. The Trustee now seeks guidance as to (a) whether this approach is acceptable to the Court and the Office of the United States Trustee, (b) whether, upon conversion, Mr. Lowe may serve as successor chapter 7 trustee, and existing estate professionals may continue

as successor accountant and counsel, and (c) whether it may be feasible to streamline final reporting requirements for the chapter 7 case.

12. <u>Tax Returns; Final Report of Trustee in Chapter 11 Case</u>. The Trustee will prepare and file tax returns for the estate and will submit a final report in this chapter 11 case in the manner prescribed by applicable law and procedures.

13. <u>Conversion to Chapter 7</u>. This case will be converted to a case under chapter 7 of the Bankruptcy Code if so determined by this Court and the Office of the United States Trustee.

14. <u>Distributions to General Unsecured Creditors</u>. As noted above, the essential purpose of the chapter 7 case would be to facilitate prompt pro rata distributions to holders of general unsecured claims against the Debtor. Based on his analysis to date, the Trustee does not believe that it would be necessary or appropriate to engage in a claims objection process for the substantial majority of such claims, so it should be possible to conclude the administration of the chapter 7 case within a brief period.

15. <u>Final Report and Closing of Chapter 7 Case</u>. The Trustee anticipates that minimal additional reporting would be required in connection with the chapter 7 case, and that such case could be closed promptly after the cash distributions are complete. For the same reasons, the administrative expense of the chapter 7 case itself should be modest.

Dated: April 19, 2013

By: /s/ James S. Lowe II
JAMES S. LOWE II
Chapter 11 Trustee

Prepared by:

WINSTON & STRAWN LLP

By: /s/ David A. Honig
David A. Honig
Counsel for Chapter 11 Trustee
JAMES S. LOWE II